UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 13-10278-RWZ


THOMAS H. ROBINSON

v.

SPENCER STUART, INC., *et al.*

<u>MEMORANDUM OF DECISION</u>

August 5, 2013


ZOBEL, D.J.

Plaintiff Thomas H. Robinson used to work as an executive search consultant for

defendant Spencer Stuart, Inc. ("Spencer Stuart"). He now sues Spencer Stuart and

two of its employees, defendants Joseph H. Boccuzi and Michael J. Anderson, claiming

that they cheated him out of more than two million dollars in earned compensation and

more than thirteen million dollars in future compensation.

Robinson originally filed this suit in state court, but defendants asserted diversity

jurisdiction and removed it here. Robinson now moves to remand the case to state

court, while defendants move to dismiss the complaint.

I.    **Background**

As appropriate in this procedural posture, the facts below are recounted as

alleged in the current complaint. <u>See</u> <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1,

4 (1st Cir. 2011).

Robinson joined Spencer Stuart, a global executive search firm, in October 1998. From 2000 to 2010, he served as the managing director of Spencer Stuart's North American medical technology practice. His contract promised him a $250,000 base salary, with an additional annual "commission/bonus" that depended on his performance. Docket # 22 (Am. Compl.), ¶ 7. That additional compensation "was weighted at a ratio of thirty (30%) percent of origination credits, thirty (30%) percent of conversion credits, and forty (40%) percent of execution credits." Id. ¶ 8. "The total credits are then multiplied by the particular consultant's takeout percentage in order to determine the consultant's bonuses and commissions." Id.

However, Spencer Stuart failed to pay Robinson the compensation his contract promised. Instead, Boccuzi and other Spencer Stuart executives "wrongly secur[ed] [Robinson's] commissions for their own pecuniary gain, including execution credits that [he] rightfully earned." Id. ¶ 17. Robinson informed Spencer Stuart executives on numerous occasions that Boccuzi was cheating him and other consultants out of their earned compensation; those executives promised to address the issue, but did nothing. Between 2001 and 2007, Robinson had twelve "detailed discussions" about Boccuzi with Anderson, who was then the manager of Spencer Stuart's Boston office. Id. ¶ 12. Anderson repeatedly promised that Spencer Stuart would address the issue through new company-wide compensation policies and procedures, even though he knew no such procedures would actually be implemented.

Meanwhile, Boccuzi began secretly removing Robinson from key account teams, excluding him from client meetings, and giving him unfavorable performance reviews.

He likewise sought to exclude Robinson from Spencer Stuart partner committees, and

he delayed Robinson's progress towards partnership. Boccuzi also criticized Robinson

to Spencer Stuart partners and clients as "checked out" and "not in the game." Id. ¶ 41.

Robinson complained privately to many leading partners about Boccuzi's conduct, but

Spencer Stuart took no action.

Robinson resigned from Spencer Stuart in July 2010. He filed this suit in state

court on January 4, 2013, asserting claims for breach of contract, breach of the implied

covenant of good faith and fair dealing, unpaid wages, tortious interference with

contract, defamation, conversion, fraud, and wrongful termination. Defendants removed

the case to this court on February 13, claiming diversity jurisdiction; although Anderson

was a Massachusetts resident, defendants claimed that he had been fraudulently

joined and so should not figure in the jurisdictional analysis. Robinson subsequently

filed an amended complaint, adding new allegations and new claims. Robinson now

moves to remand the action to state court, while defendants move to dismiss.

## II.    Motion to Remand

"A non-resident defendant may remove a civil case from state court to a United

States District Court if the case presents a controversy between citizens of different

states and the amount in controversy exceeds $75,000." Phillips v. Medtronic, Inc., 754

F. Supp. 2d 211, 215 (D. Mass. 2010). Such removal is only proper where there is

complete diversity of citizenship, meaning no plaintiff is from the same state as any

defendant. See Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 553-54 (2005).

Whether complete diversity exists depends on the circumstances at the time of the

petition for removal. Phillips, 754 F. Supp. 2d at 215; Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); cf. Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 n.6 (2007).

However, "the plaintiff may not defeat the right of removal by fraudulently joining a non-diverse defendant." Phillips, 754 F. Supp. 2d at 215. If the plaintiff brings a claim against a defendant "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith," that defendant has been fraudulently joined. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98 (1921). The First Circuit apparently has never elaborated on the correct standard for fraudulent joinder; but other district courts in the First Circuit have regularly applied a standard originally developed by the Fifth Circuit. See Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV, 828 F. Supp. 2d 425, 432-33 (D.P.R. 2011).

The Fifth Circuit test finds fraudulent joinder if "either (1) there was actual fraud in the pleading of jurisdictional facts, or (2) the plaintiff is unable to establish a cause of action against the non-diverse party in state court." Id. To apply the second prong, the court will "ordinarily conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the in-state defendant." Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 376 (5th Cir. 2006). However, "a court is not held captive by the allegations in the complaint," and "may consider additional evidence beyond the claims made in the pleadings." Phillips, 754 F. Supp. 2d at 215. The party invoking federal jurisdiction bears the burden of clearly and convincingly showing fraudulent joinder. See id.

Defendants do not allege that there was any actual fraud in Robinson's pleading

4

of the jurisdictional facts; instead, they rest on the second prong of the test, insisting

that Robinson is unable to establish any cause of action against Anderson. To evaluate

that claim, I consider the complaint Robinson originally filed in state court, which was

the active complaint as of the petition for removal. See Pullman Co., 305 U.S. at 537. In

that complaint, Robinson asserted only one claim against Anderson, for

"Fraud/Misrepresentation." Docket # 1, Ex. A (state court record), Complaint ¶¶ 71-82.

But his factual allegations in that complaint were plainly insufficient to sustain a claim

for fraud, which must be pled with particularity under either Federal Rule of Civil

Procedure 9(b) or its state cognate Massachusetts Rule of Civil Procedure 9(b). Under

those Rules, a claim based on fraud or deceit must state with particularity what the

underlying misrepresentation was, who made it, and when and where it was made.

See Fed. R. Civ. P. 9(b); Mass. R. Civ. P. 9(b); Alt. Sys. Concepts v. Synopsys, Inc.,

374 F.3d 23, 29-30 (1st Cir. 2004); Equip. & Sys. for Indus. v. Northmeadows Constr.

Co., 798 N.E.2d 571, 574 (Mass. App. Ct. 2003). Robinson's complaint, however,

contained no such particular allegations about Anderson. It only alleged generally that

Anderson "made regular and repeated representations" to Robinson about how

commissions were calculated, Complaint ¶ 72;  that Robinson had "many detailed

discussions" with Anderson about Boccuzi's behavior, id. ¶¶ 20, 74; that Robinson "was

reassured that the situation would be addressed and rectified," and that he continued

his employment with Spencer Stuart in reliance on those promises, id. ¶¶ 75-76. The

complaint does not explain when and where Anderson made even one of the alleged

misrepresentations, nor does it describe precisely what Anderson said about how

commissions were calculated or how the Boccuzi situation would be addressed.

Without further details, the complaint's generic allegations about Anderson clearly do

not state a claim for fraud or misrepresentation.  Anderson was thus improperly joined,

and so the motion to remand must be denied.

Moreover, Robinson's amended complaint also fails to state any claim against

Anderson. The amended complaint names Anderson in three counts: one under the

Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count III); one for

"Fraud/Misrepresentation" (Count VII); and one for negligent misrepresentation (Count

VIII). Docket # 22 (Am. Compl.) ¶¶ 66-79, 96-112. The fraud and negligent

misrepresentation counts again fail to state a viable claim against Anderson because

Robinson has still failed to allege particular details about the alleged

misrepresentations.[1] See, e.g., id. ¶ 23 (alleging Robinson had "a minimum of twelve

(12) detailed discussions with [Anderson] between 2001 through 2007"); id. ¶ 30

(mentioning "a conversation in 2005"); id. ¶ 31 (alleging that "from 2005 through 2007,

Anderson made numerous representations" to Robinson). Stating only a year or a

range of years when the alleged conversations took place is not enough to plead fraud

with particularity. Moreover, Massachusetts sets a three-year statute of limitations for

tort actions. Mass. Gen. Laws ch. 260, § 2A.  The amended complaint does not allege

any misrepresentations by Anderson after 2007, meaning that Robinson's putative

fraud and negligent misrepresentation claims against Anderson expired well before

---

[1] Negligent misrepresentation claims must be pleaded with particularity where, as here, the underlying allegations charge fraud. N. Am. Catholic Educ. Programming Found. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009).

Robinson filed his complaint on January 4, 2013.[2]

As for the amended complaint's Wage Act claim against Anderson, it also fails. Wage Act claims are subject to a three-year statute of limitations. Mass. Gen. Laws ch. 149, § 150. Robinson's Wage Act claim is therefore limited to unpaid compensation accruing within the three years before he filed the complaint—that is, compensation accruing after January 4, 2010. See Crocker v. Townsend Oil Co., 979 N.E.2d 1077, 1084-85 (Mass. 2012). Because Robinson left his employment with Spencer Stuart in July 2010, he can only claim compensation under the Wage Act for about a six-month period. In addition, the Wage Act regulates "employers"; where the employer is a corporation, that term is deemed to include the "president and treasurer of [the] corporation and any officers or agents having the management of such corporation." Mass. Gen. Laws ch. 149, § 148. The Supreme Judicial Court of Massachusetts has interpreted this language to include corporate officials who "control[], direct[], and participate[] to a substantial degree in formulating and determining policy of a corporation." Wiedmann v. Bradford Group, Inc., 831 N.E.2d 304, 314 (Mass. 2005), superseded by statute on other grounds, Mass. Gen. Laws ch. 149, § 150.

Robinson's amended complaint does not state a Wage Act claim against Anderson, because it does not plausibly show that Anderson "ha[d] the management of" Spencer Stuart during the six-month period at issue. Mass. Gen. Laws ch. 149, §

---

[2] The limitations period begins when a plaintiff actually discovers, or reasonably should have discovered, that he has been harmed by the defendant's conduct. Epstein v. C.R. Bard, Inc., 460 F.3d 183 (1st Cir. 2006). Given that Robinson had apparently been complaining for years about Boccuzi's conduct, he reasonably should have discovered before January 2010 that Anderson's alleged representations were false and that he had been harmed by relying on them.

148. The conclusory allegation that he "controlled, directed, and participated to a substantial degree in formulating and determining Company policy," Am. Compl. ¶ 70, will not suffice.[3] Moreover, the claim is not saved by Robinson's subsequent affidavit, which states that he heard other corporate officers praise Anderson's strategic thinking and that Anderson "routinely led strategic discussions" at global Spencer Stuart meetings. Docket # 27, Ex. 1, ¶¶ 7-11. At best, these additional facts might raise a plausible inference that Anderson had some influence on Spencer Stuart's strategic planning. But they certainly do not raise a plausible inference that he "controls [and] directs" the company's policy to the extent necessary to incur liability under the Wage Act. Wiedmann, 831 N.E.2d at 314. Instead, it plainly appears from the complaint and from Robinson's affidavit that Anderson merely held "a managerial position over some branch, division, or office" of Spencer Stuart, id., meaning he is not liable under the Wage Act. See id.; see also Tomei v. Corix Utils. (U.S.), Civil Action No. 07-11928-DPW, 2009 WL 2982775, at *16 (D. Mass. Sept. 14, 2009); Bisson v. Ptech, Inc., No. 02-2117, 2004 WL 2434638, at *2 (Mass. Super. Oct. 19, 2004) ("If any officer or agent who actively participated in a corporation's management were to fall within this definition, then every corporate vice-president and untold other officers and employees would be personally liable for their corporation's failure timely to pay wages to its employees. This Court does not believe that the Legislature intended . . . to impose

---

[3] Nor do the allegations that Anderson told Robinson before 2007 that he "was involved in creating new Company-wide [compensation] systems, policies, and processes." Am. Compl. ¶¶ 72-73; see also id. ¶ 30. Those allegations are particularly insufficient because the amended complaint also alleges Anderson indicated in those conversations that "other management people and his own supervisors" were the ones who would actually "remedy the situation." Id. ¶ 28.

personal liability on so many corporate employees.").

In sum, even if I were to consider the claims raised in the amended complaint, defendants have still met their burden to clearly and convincingly show that Robinson's claims against Anderson cannot be sustained. That confirms the conclusion that Anderson was fraudulently joined, and that Robinson's motion to remand must be denied.

## III.   Motion to Dismiss

Having determined that jurisdiction over this case is proper, I now consider defendants' motion to dismiss the amended complaint.[4] The motion is allowed as to Robinson's claims against Anderson, for the reasons given in the previous section. See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("[A] finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant."). That leaves Robinson's claims against Spencer Stuart and against Boccuzi.

To decide whether Robinson has stated any claim against those defendants, I accept as true all factual allegations contained in the amended complaint, but not its legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the complaint fails in whole or in part to state a plausible claim upon which relief can be granted, the deficient portions must be dismissed. Id. I consider each count of the amended complaint individually.

---

[4] Defendants' motion to dismiss the original complaint (Docket # 9) is still pending. However, that motion became moot when Robinson filed his amended complaint. It is therefore denied.

### A.   Count I

Count I charges Spencer Stuart with breach of contract for failing to pay Robinson the commissions to which he was entitled under his employment agreement. Spencer Stuart responds that this claim must fail because Robinson was an at-will employee; but that argument plainly lacks merit. It is true that Robinson is assumed to have been an at-will employee, since he did not allege otherwise in his complaint. See, e.g., Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (treating plaintiff as an at-will employee because he failed to allege otherwise). However, Robinson's status as an at-will employee is only relevant to whether Spencer Stuart was free to fire him or demote him. See id. (employer may generally terminate or demote an at-will employee at any time); Upton v. JWP Businessland, 682 N.E.2d 1357, 1358 (Mass. 1997). It is not relevant to whether Spencer Stuart was required to pay him the compensation his contract promised him for the work he performed. Because Robinson has plausibly alleged facts showing that Spencer Stuart failed to pay him properly for work he performed in accordance with his employment contract, Count I survives.[5]

### B.   Count II

Count II alleges that Spencer Stuart breached its implied covenant of good faith and fair dealing towards Robinson in two ways: by failing to pay him the compensation he had earned, and by constructively discharging him. The covenant of good faith and

---

[5] Of course, because Robinson was an at-will employee, he cannot recover under a breach of contract theory for lost future salary that he had not yet earned at the time he was terminated. See Gram v. Liberty Mut. Ins. Co., 429 N.E.2d 21, 22 (Mass. 1981) (at-will employee "is not entitled to normal contract damages for the termination of his at-will employment"); cf. Am. Compl. ¶ 48 (seeking "$13,300,000.00 in lost future salary, bonuses, and stock appreciation").

fair dealing, implied by Massachusetts law in every contract, requires the parties to honor not only the letter but also the spirit of their agreement. See Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013). However, it "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Id. (omission in original) (quoting Uno Rests. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (2004)). Robinson clearly states a claim here as regards Spencer Stuart's alleged failure to pay him the compensation he had earned; he has plausibly alleged that the parties' contract envisioned he would be paid according to a certain formula, and that Spencer Stuart did not in fact pay him according to that formula. If so, Spencer Stuart failed to abide by the spirit of the parties' agreement in that respect.

Robinson also states a claim for breach of the implied covenant of good faith and fair dealing with respect to his alleged constructive discharge. Under Massachusetts law, an employer breaches the implied covenant "when, despite the employer's good faith, the discharge of the terminable at-will employee nevertheless results in the employee's loss of compensation already earned." King v. Driscoll (King II), 673 N.E.2d 859, 862 (Mass. 1996). Thus, for instance, if an at-will employee receives a regular holiday bonus based on the work he has performed all year, and he is fired without good cause just before the holidays, he may sue for that holiday bonus. See Gram v. Liberty Mut. Ins. Co., 429 N.E.2d 21, 29 (Mass. 1981) (holding plaintiff insurance salesman, an at-will employee terminated without good cause, could recover

"renewal commissions" for policies he had sold before being terminated).[6] So too here. Robinson plausibly alleges facts indicating that when he was constructively discharged, he lost certain commissions that he had already earned for executive search work he had already performed. He may therefore assert a claim under the implied covenant of good faith and fair dealing to recover any "identifiable, reasonably anticipated future compensation, based on his past services." Gram, 429 N.E.2d at 29.[7]

Spencer Stuart argues that Robinson has not alleged facts plausibly showing constructive discharge. Constructive discharge requires "conditions . . . so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." GTE Prods. Corp. v. Stewart, 653 N.E.2d 161, 169 (Mass. 1995) (quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977)). It is not met by "mere dissatisfaction with the nature of assignments, criticism of an employee's performance, and dissatisfaction with compensation." Id.

Robinson has alleged that after he began complaining about Boccuzi's misconduct, Boccuzi began secretly removing Robinson from key account teams,

---

[6] Spencer Stuart argues that Robinson can only recover if he shows (1) that Spencer Stuart terminated him in order to retain his commissions; and (2) that Spencer Stuart actually retained those commissions itself (rather than paying them to Boccuzi). The former requirement is wholly inconsistent with the Supreme Judicial Court's holding in Gram, which allowed the employee to claim future compensation for past services even though there was "no evidence warranting an inference that [the employer] discharged [the employee] for the purpose of appropriating his past services." Gram, 429 N.E.2d at 29. The latter requirement is unsupported by the reasoning in Gram and by the Supreme Judicial Court's description of that case in King II, which focuses not on the benefit to the employer but on "the employee's loss of compensation already earned." King II, 673 N.E.2d at 862. Spencer Stuart cites no Supreme Judicial Court case holding to the contrary, and the cases it does cite are distinguishable.

[7] Of course, he may not recover on this claim for damages in the form of lost future compensation he had not yet earned. Gram, 429 N.E.2d at 22; see Gram v. Liberty Mut. Ins. Co., 461 N.E.2d 796, 798 (Mass. 1984), cf. supra note 5.

excluding him from client meetings without justification, seeking to exclude him from partner committees, delaying his promotion to partner, and maligning him to other partners and to Spencer Stuart clients. Boccuzi also allegedly gave Robinson an unfavorable performance review without any factual basis. Robinson says he made leading Spencer Stuart partners aware that Boccuzi was undermining him and harassing him, but Spencer Stuart did nothing about it. <u>See</u> Am. Compl. ¶¶ 34-43.

It is a close call whether these allegations are enough to plausibly show that Robinson's position at Spencer Stuart was so intolerable that a reasonable employee would have felt compelled to resign. Drawing all inferences in favor of Robinson, however, I find his allegations are sufficient to "nudge[] [his] claims across the line from conceivable to plausible." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Determining whether Robinson truly suffered intolerable conditions at work "necessarily involves a more detailed examination of the facts . . . than is currently possible." <u>Declude, Inc. v. Perry</u>, 593 F. Supp. 2d 290, 296 (D. Mass. 2008). Spencer Stuart's motion to dismiss this count is therefore denied.

### C.    Count III

Count III seeks recovery against Spencer Stuart, Boccuzi, and Anderson under the Massachusetts Wage Act, Mass. Gen. Laws ch.149, § 148. I have already concluded that Count III fails to state a claim against Anderson; it fails to state a claim against Boccuzi for similar reasons. Rule 8(a) is not satisfied by conclusory allegations that Boccuzi "was an officer and executive of Spencer Stuart who controlled, directed, and participated to a substantial degree in formulating and determining Company

policy." Am. Compl. ¶ 76; see Fed. R. Civ. P. 8(a)(2); Iqbal, 556 U.S. at 678-79. Instead, there must be sufficient facts alleged to make those conclusions plausible. No such facts appear here. The amended complaint alleges that Boccuzi worked at Spencer Stuart, but does not allege any facts showing that he "[had] the management of such corporation." Mass. Gen. Laws ch. 149, § 148; see Tomei, 2009 WL 2982775, at *16; Bisson, 2004 WL 2434638, at *2.

Spencer Stuart also argues that Count III be dismissed because Robinson has not alleged he was owed a commission that was "definitely determined." Mass. Gen. Laws ch. 149, § 148. A Wage Act claim only reaches earned compensation that can be "arithmetically determin[ed]" by applying the "applicable formulas and deductions." Wiedmann, 831 N.E.2d at 312. It does not allow a plaintiff to sue for discretionary bonuses. Weems v. Citigroup Inc., 900 N.E.2d 89, 94 (Mass. 2009). Here, Robinson claims that his employment agreement entitled him to an annual "commission/bonus" based on "a precise calculation of origination, conversion, and execution credits multiplied by a weighted average related to each candidate search." Am. Compl. ¶ 7; see also id. ¶ 8 (describing the applicable formula). While it is not entirely clear how this formula applied, Robinson has at least alleged facts making it plausible that he was entitled to a commission that was arithmetically determinable, rather than one that depended on his supervisors' subjective discretion and evaluation. See id. at ¶¶6-8. His Wage Act claim against Spencer Stuart therefore survives.

### D.   Count IV

Count IV charges Boccuzi with tortious interference with contractual relations. To

succeed on such a claim, "a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g. a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007). In the context of an employment relationship, where the defendant is a corporate official acting within the scope of his employment responsibilities, the plaintiff must show that the defendant acted with "actual malice"—that is, "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. (quoting Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1246 (Mass. 1992)). Here, Robinson's amended complaint clearly pleads sufficient facts to state a claim. It alleges (1) that he had an employment relationship with Spencer Stuart;[8] (2) that Boccuzi knowingly disrupted that relationship, (3) that Boccuzi was driven by actual malice, in desiring to retaliate against Robinson for his complaints about Boccuzi's misconduct; and (4) that Robinson was constructively discharged as a result.

Boccuzi argues that the amended complaint does not sufficiently allege facts showing actual malice. He correctly notes that actual malice does not include motives of personal or financial gain, or of personal dislike. King v. Driscoll (King I), 638 N.E.2d 488, 494-95 (Mass. 1994). But Robinson has alleged that Boccuzi was driven by a

---

[8] Contrary to Boccuzi's argument, Robinson need not allege that Boccuzi caused a breach of contract by Spencer Stuart. Blackstone explicitly states that a claim for tortious interference may be grounded on the disruption of an employment relationship, not just the breach of a contract. Blackstone, 860 N.E.2d at 12-13.

desire to retaliate against Robinson for complaining about his misconduct. In appropriate circumstances, motives of retaliation or revenge can qualify as actual malice. See Cachopa v. Town of Stoughton, 893 N.E.2d 407, 411-13 (Mass. App. Ct. 2008); McNamee v. Jenkins, 754 N.E.2d 740, 745 (Mass. App. Ct. 2001). Taking all Robinson's factual allegations as true, he has at least stated a plausible claim in Count IV.

### E.    Count V

In Count V, Robinson seeks relief against Boccuzi for defamation, based on statements Boccuzi allegedly made about Robinson's work ethic and work quality. Specifically, Robinson alleges that Boccuzi told Spencer Stuart partners Robinson was "checked out," and told clients that Robinson was "not in the game" because of a death in his family.[9] Am. Compl. ¶ 90. Boccuzi is correct that Robinson has not alleged facts plausibly supporting a claim for defamation. Phrases like "checked out" and "not in the game," when used to describe a person's work ethic or work quality, are "broad descriptive terms, susceptible to varying interpretations." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 179 (D. Mass. 2001). In the context presented here, they are not provably false. They therefore cannot give rise to liability for defamation. See Levesque v.  Doocy, 560 F.3d 82, 88 (1st Cir. 2009) ("A communication is defamatory if it is provable as false . . . ."); Scott, 141 F. Supp. 2d at 177, 179 (holding that a defamation claim requires "a false assertion of fact," and finding that a description of the plaintiff as "disorganized" and "ill-prepared" does not qualify); see also Levinsky's,

---

[9] Robinson notes that there were, in fact, several deaths in his family, but insists that his work never suffered as a result.

Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 129-130 (1st Cir. 1997); Berard v. Town of

Millville, 133 F. Supp. 2d 197, 203-04 (D. Mass. 2000). The motion to dismiss is

consequently allowed as to Count V.[10]

> **F.    Count VI**

Count VI charges Spencer Stuart and Boccuzi with conversion because Spencer

Stuart allegedly failed to pay Robinson commissions he was owed, and paid them to

Boccuzi instead. Defendants move to dismiss this count on the ground that a claim for

conversion in Massachusetts does not allow a plaintiff to recover unpaid compensation.

Defendants are correct. Massachusetts law does not allow a conversion claim

for intangible property. See, e.g., Blake v. Prof'l Coin Grading Serv., 898 F. Supp. 2d

365, 386-87 (D. Mass. 2012). That principle extends to bar a conversion claim for

unpaid wages or commissions. See Struzziero v. Lifetouch Nat'l Sch. Studios, 677 F.

Supp. 2d 350, 354 (D. Mass. 2009); Discover Realty Corp. v. David, No. 1520, 2003

WL 22387138, at *3 (Mass. App. Div. Oct. 14, 2003); see also Third Nat'l Bank of

Hampden Cnty. v. Cont'l Ins. Co., 446 N.E.2d 380, 383 (Mass. 1983) (property interest

in the unpaid proceeds of an insurance policy cannot sustain a conversion claim).

Count VI is therefore dismissed.

> **G.    Counts VII and VIII**

Count VII charges Spencer Stuart, Boccuzi, and Anderson with

"Fraud/Misrepresentation," Am. Compl. at 19, while Count VIII charges only Spencer

---

[10] I thus need not reach Boccuzi's alternative argument that his comments were protected by an employer's conditional privilege over its assessments of an employee's job fitness. See Bratt v. Int'l Bus. Mach. Corp., 467 N.E.2d 126, 129 (Mass. 1984).

Stuart and Anderson with negligent misrepresentation. As explained above with respect

to Anderson, these counts fail to state a claim for two reasons. First, the amended

complaint does not describe any of the alleged misrepresentations with sufficient

particularity. See Fed. R. Civ. P. 9(b); Alt. Sys. Concepts v. Synopsys, Inc., 374 F.3d

23, 29-30 (1st Cir. 2004). Second, the complaint does not describe any

misrepresentations occurring after 2007; but the Massachusetts statute of limitations

for fraud and misrepresentation claims is three years, see Mass. Gen. Laws ch. 260, §

2A, and so the facts pleaded in the amended complaint make it clear that these claims

were time-barred before the original complaint was filed in January 2013.[11] The fraud

and misrepresentation claims against Spencer Stuart and Boccuzi are no more precise

than those against Anderson, and they are apparently no less time-barred. Counts VII

and VIII are therefore dismissed in their entirety.

> ### H.     Count IX

Count IX sues Spencer Stuart for constructive termination. As described above,

Robinson is presumed (in the absence of any alleged facts showing the contrary) to be

an at-will employee. In Massachusetts, the general rule is that "[e]mployment at will is

terminable by either the employee or the employer without notice, for almost any

reason or for no reason at all." Jackson v. Action for Bos. Cmty. Dev., 525 N.E.2d 411,

412 (Mass. 1988). That rule, however, is subject to two exceptions. First, as described

above, an at-will employee may sue under the implied covenant of good faith and fair

dealing to recover compensation earned before his termination. See Bergeson v.

---

[11] See supra note 2.

18

Franchi, 783 F. Supp. 713, 717 (D. Mass. 1992); Gram, 429 N.E.2d at 29. I have already determined that Robinson states a claim on that theory in Count II above.[12] Second, an at-will employee can sue if his employment "is terminated contrary to a well-defined public policy." Wright, 598 N.E.2d at 1244. Under that principle, "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing [a] workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371 (Mass. 1989).

Robinson claims that he was terminated because he complained that Boccuzi was stealing his commissions. He argues that he was therefore terminated for asserting a legally guaranteed right—namely, his right to his commissions. He also describes his termination as retaliation for his complaints that Spencer Stuart was violating the Wage Act by failing to pay him his commissions.[13]

Those allegations cannot sustain a wrongful termination claim by an at-will employee. "The public policy exception is narrowly construed; not every statutory right guarantees employment or provides grounds for a claim arising out of termination." Parker v. Town of N. Brookfield, 861 N.E.2d 770, 775 (Mass. App. Ct. 2007). For instance, an employee who is fired in retaliation for participating in a shareholder

---

[12] To the extent Robinson seeks to assert the exact same claim again here in Count IX, it is dismissed here as redundant.

[13] I note Robinson's allegations do not indicate whether he ever explicitly told Spencer Stuart before his termination that he believed it was violating his rights under the Wage Act.

derivative suit cannot sue for wrongful discharge, even though he had a legal right to
bring that shareholder derivative suit. King I, 638 N.E.2d at 492-93. Instead, the public
policy only applies where an at-will employee asserts a legal right that goes beyond
"the internal administration, policy, functioning, and other matters of an organization."
Id. at 492; see Wright, 589 N.E.2d at 1243-45. Here, even assuming that Robinson has
sufficiently alleged he was terminated for exercising his legal rights, the legal right he
asserted was only his right to his own compensation. It did not substantially implicate
any "external matter involving . . . public policy." King I, 638 N.E.2d at 492; see also id.
at 493 ("[A] remote effect on the public, arising in the context of a conflict over internal
policy matters, does not elevate [the conduct alleged] to protected activity."). In this
context, Robinson's allegations do not state a wrongful termination claim.[14]

## I.    Counts X and XI

Finally, Robinson seeks relief from Spencer Stuart on Count X under a theory of
promissory estoppel, and from Spencer Stuart and Boccuzi on Count XI under a theory
of quantum meruit or unjust enrichment. The promissory estoppel count argues that
Robinson reasonably relied on Spencer Stuart's promise that he would be paid
according to their employment agreement, and so Spencer Stuart must pay him
according to that agreement. The quantum meruit count argues that Robinson
performed services for Spencer Stuart, and that Spencer Stuart and Boccuzi were

---

[14] I therefore need not decide whether any common law wrongful termination claim would also be
preempted by the availability of a statutory remedy for Wage Act retaliation. See Mass. Gen. Laws ch.
149, § 148A; Dobin v. CIOview Corp, No. 2001-00108, 2003 WL 22454602, at *9 (Mass. Super. Oct. 29,
2003).

unjustly enriched by those services.[15]

Spencer Stuart and Boccuzi move to dismiss these counts on two grounds. First, they argue that these equitable theories are precluded because plaintiff has alleged a valid contract between the parties. However, the Federal Rules do not bar a plaintiff from asserting mutually inconsistent theories of recovery. See Fed. R. Civ. P. 8 (d)(3). While Robinson's promissory estoppel and quantum meruit theories may prove inapplicable or redundant, I will not dismiss them on that ground now. See Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 353 (D. Mass. 2011); Durmic v. J.P. Morgan Chase Bank, N.A., 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010). Second, defendants argue that these equitable theories do not apply here because an at-will employee cannot show reasonable reliance on promises of future remuneration. But Robinson's promissory estoppel and quantum meruit theories do not assert that he relied on an expectation of future employment; they assert only that he expected to be paid for the services he actually performed. For promissory estoppel purposes, an at-will employee may have difficulty showing that he reasonably relied on a promise of continued employment, see, e.g., Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 286-87 (D. Mass. 1987); but he can surely show that he reasonably relied on his employer's promises regarding the compensation he would be paid for work he did before he was fired.  Likewise, a plaintiff seeking damages in quantum meruit need only show that (1) he conferred a benefit on the defendant; (2) the defendant accepted

---

[15] Although Robinson's theory is not entirely clear, he apparently alleges that Spencer Stuart and Boccuzi were both enriched unjustly because Spencer Stuart obtained the benefit of Robinson's services and Boccuzi obtained the compensation Robinson should have been paid. I make no comment on the merits of that theory.

that benefit under circumstances where a reasonable person would have expected compensation was due; and (3) the plaintiff did reasonably expect compensation when the benefit was rendered. See Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106-108 (D. Mass. 1990); 42 C.J.S. Implied Contracts § 25 (West 2013). An at-will employee can surely show all of those elements with regard to services he rendered while employed, regardless of whether he had a reasonable expectation of future employment. The motion to dismiss is therefore denied as to Counts X and XI.[16]

## IV.    Conclusion

Robinson's motion to remand (Docket # 16) is DENIED. Defendants' motion to dismiss the amended complaint (Docket # 25) is ALLOWED as to Count III's claims against Anderson and Boccuzi, and as to Counts V through IX; it is DENIED as to the remaining counts.

The motion to dismiss Robinson's original complaint (Docket # 9) is DENIED AS MOOT. Robinson's motion for leave to file a supplemental affidavit (Docket # 27) and defendants' motion for leave to file a reply brief (Docket # 35) are ALLOWED.


_____August 5, 2013_____              _____/s/Rya W. Zobel_____
DATE                                              RYA W. ZOBEL
                                        UNITED STATES DISTRICT JUDGE


---

[16] Like Robinson's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, his claims under promissory estoppel and quantum meruit theories can only justify recovery for services he had already performed (not compensation for future services). See supra notes 5 & 7.

22